**ROYAL CHINA, INC., and Brookpark Royalon, Inc., Plaintiffs-Appellees,**

v.

**TRAVELERS INDEMNITY COMPANY, Defendant-Appellant.**

**ROYAL CHINA, INC., and Brookpark Royalon, Inc., Plaintiffs-Cross-Appellants,**

v.

**TRAVELERS INDEMNITY COMPANY, Defendant-Cross-Appellee.**

Nos. 74-1024, 74-1025.

United States Court of Appeals, Sixth Circuit.

Argued April 16, 1974.

Decided June 18, 1974.

990

John E. Martindale, Arter & Hadden, Cleveland, Ohio, for defendant-appellant.

Sheldon Berns, Cleveland, Ohio, for plaintiff-appellees; Kahn, Kleinman, Yanowitz & Arnson, Michael H. Diamant, Cleveland, Ohio, on brief.

Before WEICK, MILLER and LIVELY, Circuit Judges.

WEICK, Circuit Judge.

In this appeal we construe the provisions of a policy of insurance issued by Travelers Indemnity Company (Travelers) to Royal China, Inc. and its subsidiaries (hereinafter referred to as Royal), which policy insured Royal against the perils of "all risks of loss or damage to the insured's records of accounts receivable."

A fire occurred in the Sebring, Ohio plant of Royal resulting in the destruction of certain records which were kept in filing cabinets. Royal contended that as a result of the destruction of these records it was unable to collect on some of its accounts receivable. Travelers denied liability claiming that the particular records which were destroyed were not insured under the provisions of the policy.

Royal filed suit on the policy of insurance in the District Court against Travelers, to recover its damages. Jurisdiction was based on diversity of citizenship. The parties stipulated the facts, and each filed a motion for summary judgment. The District Court granted Royal's motion for summary judgment and entered judgment against Travelers in the amount of $37,874.58. Travelers appealed. Royal cross-appealed, claiming additional damages. We reverse.

The case is governed by Ohio law.

The policy of insurance provided that the stated subject of the insurance was as follows:

1. Subject of Insurance. (a) All sums due the insured from customers, provided the insured is unable to effect collection thereof as a direct result of loss of or damage to records of accounts receivable:

(b) Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

(c) Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

(d) Other expenses, when reasonably incurred by the insured in re-establishing records of accounts receivable following such loss or damage.

The policy further contained the following condition precedent to recovery:

3. Protection of Records of Accounts Receivable. Insurance under this policy shall apply only while records of accounts receivable are contained in the premises described above, it being a condition precedent to any right of recovery hereunder that such records shall be kept in the following described receptacles at all times when the premises are not open for business, except while such records are in actual use or as stated in paragraph 4 below:

| Kind | Name of Maker | "Class or Hour Exposure" of Label | Name of Issuer of Label |
|---|---|---|---|
| DIEBOLD | | 4 HOUR | |

The policy provided in Condition 7, in regard to determination of the amount of the accounts receivable, the following:

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the insured. All unearned interest and service charges shall be deducted.

It was the position of Travelers that the policy insured only against loss or damage to "records of accounts receivable"; that such insured records were required to be kept in the Diebold safe; that the ledger cards were records of accounts receivable and were kept in the safe as the policy required; that such records were not destroyed; that purchase orders, bills of lading, invoices and receipts, stored in filing cabinets (which were destroyed by fire) were not records of accounts receivable; and that if they were records of accounts receivable they were required to be kept in the Diebold safe.

Travelers further contended that even if these papers which were stored in cabinets were held to be records of accounts receivable, the amount of Royal's claim can be determined from the ledger cards, and therefore such amount must be deducted under the provisions of Condition 7.

The District Court in its Memorandum and Order found no ambiguity in the provisions of the policy. It further found that the storing of the ledger cards in the Diebold safe was substan-

tial compliance with the provisions of the policy, and that the invoices, bills of lading, purchase orders, receipts, and other papers stored in the cabinets were insured.

■ In our opinion, purchase orders, bills of lading, receipts and invoices stored in the cabinets are not records of accounts receivable within the meaning of the policy.

In C. E. Riley Co. v. Levy Overall Mfg. Co., 10 Ohio App. 261 (Hamilton Co. 1919), the Court said:

> If the question, relied on by defendant in error, turned on whether the book account had been proved by competent evidence, the judgment would be sustained.
>
> "By an account-book is meant a register of the daily business of the party." Swan's Treatise (23 ed.) p. 311.
>
> Invoices are not evidence of book accounts nor of sales. (*Id.* at 264).

In Brown v. Columbus Stamping & Mfg. Co., 9 Ohio App.2d 123, 223 N.E.2d 373 (Franklin Co. 1967), the court cited *Riley*, stating:

> In the case of *C. E. Riley Co. . . .* the court held:
>
> "Invoices are not evidence of book accounts nor of sales."
>
> Invoices are not books of original entry as required by the "shop book" rule. 21 Ohio Jurisprudence 2d 616, Section 596. Varying uses of invoices make them unsatisfactory as evidence. For example, they are frequently only memoranda used to advise of a sale on consignment, a note to an insurance company to secure coverage on a shipment of merchandise, a shipping notice, or other quasi-accounting uses, none of which supports the implications of the short form pleading or the reliability and significance of a book of original entry. (9 Ohio App. 2d at 127, 223 N.E.2d at 376).

*See also* 1 Ohio Jur.2d Accounts and Accounting § 4, p. 168.

■ Where a policy of insurance contains ambiguous language, it is construed against the insurer and most favorably to the insured. In the present case the District Court found the policy provisions not to be ambiguous. We agree.

■ Royal contends that the orders, receipts, invoices, and other papers kept in the cabinets were mere "back up accounts receivable records." The policy in clear language required the records of accounts receivable to be kept in the Diebold safe. It would not be substantial compliance with the policy to keep such records in cabinets which could be destroyed by fire.

We are of the opinion that the "back up" papers kept in the cabinets were not insured.

■ In an action on an account in Ohio the ledger cards, properly identified, are admissible in evidence to prove the account. Saperston v. Rae-Columbus, Inc., 151 Ohio St. 11, 84 N.E.2d 218 (1949).

The ledger cards would constitute ". . . prima facie evidence sufficient to establish the account . . . ." American Security Serv., Inc. v. Baumann, 32 Ohio App.2d 237, 244, 289 N.E.2d 373, 378 (Franklin Co. 1972).

■ The plaintiff might have been able to collect the full amount of its claims had it instituted action against its debtors to collect on the accounts. It chose not to do so.

In our opinion, Condition No. 7 also precludes recovery.

The judgment of the District Court is reversed; the cross-appeal is dismissed; and the cause is remanded for dismissal of the complaint.