On December 3, 1997, appellant filed an action on an account against appellee seeking to recover $10,987.40 representing the amount due on appellee's account for the delivery of baked goods from July 10, 1995 to December 21, 1996. Copies of six invoices (Exhibits A through F) were attached to the complaint as evidence of the parties' account. By decision filed April 20, 1998, the magistrate made the following findings of fact:[1]
 1. [Appellant] stated that due to payment not previously credited, its monetary claim was for $8,332.50.[2]
 2. V.J. Patel, manager of [appellant], stated that there was a verbal agreement between [the parties], whereby [appellant] would deliver donuts and muffins to [appellee's] motel on a daily basis.
 3. Patel stated that the procedure was for [appellee's] employee to order donuts and muffins each evening based upon occupancy and [appellant] would deliver later that night.
 4. Patel stated that he would invoice every few weeks based upon daily records compiled by an employee at Beechmont Avenue location.
 5. Patel stated that the balances due in the invoices marked as Exhibits A, B, C, D, remain unpaid.
 6. On cross-examination, Patel admitted that he was out of the country during the time period of the unpaid invoices and that he often backdated invoices when he created them. He also admitted that he did not start collection on these invoices until after the account had been cancelled.
 7. Samuel Jillson, a delivery driver for [appellant], testified as to the delivery process but could not recall exactly how much he delivered for the time periods in question other than to state he delivered many more donuts in summer than in winter.
 8. Troy Hatcher, present manager of [appellee's] motel, testified that the manager at the time of the dispute is no longer with the company.
 9. On rebuttal, [appellant] submitted Exhibits 7 
8, which are non-negotiated checks which the former manager issued for the invoices in question. It was testified that they were never counter-signed by upper management and were, therefore, never delivered to [appellant].
The magistrate then recommended that judgment be granted to appellee on the following grounds:
 The Court observes that there was no testimony from any witnesses verifying the amount of donuts and muffins delivered during the time periods in question. The Court also observes that [appellant] did not introduce into evidence the daily records which the invoices marked as Exhibits were created. As a result, the Court finds that [appellant] failed to meet its burden of proof to establish that the amount of donuts and muffins listed in the invoices were actually delivered. (Emphasis sic.)
On May 20, 1998, the trial court approved the magistrate's decision and granted judgment in favor of appellee. Appellant now appeals and, as its sole assignment of error, claims that the trial court's judgment in favor of appellee is against the manifest weight of the evidence.
"Judgments supported by some competent and credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence." C. E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence sup porting the findings of fact and conclusions of law rendered by the trial court. Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
Upon reviewing the record, we find an absence of evidence preponderating in favor of appellant. Thus, the trial court's judgment in favor of appellee and its finding that there is no evidence as to the amount of donuts and muffins actually delivered to appellee during the time period in question is supported by the record.
In an action on an account, "the [plaintiff] has the burden of proving, by a preponderance of the evidence, the existence of a contract for the sale of goods, the delivery of the goods, and the failure of the [defendant] to pay for the goods." MiddletownHeating Air v. Horn (Jan. 14, 1985), Butler App. No. CA84-07-081, unreported, at 2, quoting AMF, Inc. v. Mravec (1981),2 Ohio App.3d 29, 34. In the case at bar, as noted both in the magistrate's decision and the parties' agreed statement of the evidence, there is no testimony supporting the invoices as to the amount of donuts and muffins delivered by appellant to appellee during the time period in question, other than the testimony from Samuel Jillson and V.J. Patel. Jillson, a delivery driver for appellant, could not recall exactly how much he delivered and only remembered delivering more donuts in the summer than in the winter. Patel, by his own admission, was not even in the country during the time period in question and thus had no firsthand knowledge as to the amount actually delivered.
We are mindful of the invoices appellant attached to its complaint as evidence of the parties' account[3] and of the alleged amount of donuts and muffins delivered to appellee. We, however, find these invoices to be inadmissible. Records or documents offered to prove an account are admissible only if they fall within the business records exception to the hearsay rule.Arthur v. Parenteau (1995), 102 Ohio App.3d 302, 305. See, also,AMF, Inc., 2 Ohio App.3d at 33. The business records exception provides that such documents are not admissible as business records unless they were "made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify [their] admission." R.C. 2317.40.
In the case at bar, Patel testified that as a general rule, he would invoice every few weeks based upon daily records compiled by an unidentified employee. However, Patel also testified that during the crucial time period of the unpaid invoices, he was out of the country and that he often backdated invoices when he created them. Patel also admitted that he did not start collection on these invoices until after the parties' account had been cancelled. This testimony not only shows that appellant's record keeping and invoicing were unreliable, it also clearly shows that the invoices for the time period in question were neither prepared in the ordinary course of business nor prepared at or near the time of the delivery. As such, the invoices do not fall within the business records exception and are thus inadmissible.
Appellant correctly argues, however, that "[t]he existence of an account may be established by oral testimony with no written record being required" and cites Am. Sec. Serv., Inc. v. Baumann
(1972), 32 Ohio App.2d 237, in support of its argument. However,Baumann also held that "[i]nasmuch as an action on an account is founded upon contract, express or implied, any competent evidence
is necessarily admissible to prove the existence of the contract, * * * the furnishing of the services or goods, * * * and the balance due." Id. at 243-244. (Emphasis added.) Baumann then went on to state that "the fact that properly maintained and proved business records are admissible does not preclude the admission into evidence of testimony predicated upon firsthand knowledge * * *." Id.
at 244-245. (Emphasis added.) Because Patel was out of the country during the crucial time period of the unpaid invoices, his testimony at trial was clearly not based upon firsthand knowledge.
We therefore agree with the trial court that appellant has failed to prove that the amount of goods listed in the allegedly unpaid invoices was actually delivered to appellee. We find that the trial court's judgment in favor of appellee was not against the manifest weight of the evidence. Appellant's sole assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and VALEN, J., concur.
[1] We note that the magistrate's findings of fact are identical to the first nine statements of the parties' agreed statement of evidence filed on December 28, 1998. The agreed statement was filed because the record of the proceedings in the trial court was not maintained and was thus unavailable.
[2] Apparently, according to appellee's brief on appeal, "Appellant had missed documenting payments from Appellee and conceded this at the beginning of the trial. The amount of damages was [then] adjusted downward * * * by stipulation due to this oversight by the Appellant."
[3] We note that appellant's complaint on an account could have been dismissed on the ground that appellant failed to attach a copy of the account to the complaint as required by Civ.R. 10(D). Arthur v. Parenteau (1995), 102 Ohio App.3d 302,304, fn. 1. "A series of copies of invoices does not constitute [a copy] of an account * * *." Id. at 305, quotingBrown v. Columbus Stamping Mfg. Co. (1967), 9 Ohio App.2d 123,125.